**Rachel WETHERILL, Plaintiff,**

v.

**UNIVERSITY OF CHICAGO and Eli Lilly and Company, Defendants.**

**Maureen ROGERS, Plaintiff,**

v.

**UNIVERSITY OF CHICAGO and Eli Lilly and Company, Defendants.**

**Nos. 77 C 1434, 77 C 2485.**

United States District Court, N. D. Illinois, E. D.

Sept. 10, 1982.

Paul F. Stack, Mark D. DeBofsky, Stack & Filpi, Chicago, Ill., for plaintiffs.

Richard C. Bartelt, Wildman, Harrold, Allen & Dixon, Chicago, Ill., Lane D. Bauer, Steven C. Parrish, Shook, Hardy & Bacon, Kansas City, Mo., John Cadwalader Menk, John Cadwalader Menk & Ass'n, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

In these diversity actions Rachel Wetherill ("Wetherill") and Maureen Rogers ("Rogers") allege they were injured by exposure *in utero* to the drug diethylstilbestrol ("DES"), manufactured and supplied by Eli Lilly and Company ("Lilly") and administered experimentally to their mothers when obstetrical patients at a hospital operated by the University of Chicago ("University"). Each of Wetherill and Rogers has moved for partial summary judgment against Lilly on several issues, invoking offensive collateral estoppel.[1] For the reasons stated in this memorandum opinion and order, partial summary judgment is denied.[2]

Wetherill and Rogers claim:

1. Certain issues were determined adversely to Lilly in a prior prenatal DES exposure suit, *Bichler v. Eli Lilly & Co.* (N.Y.Sup.Ct., Bronx Cty., July 16, 1979), *aff'd*, 55 N.Y.2d 571, 450 N.Y.S.2d 776, 436 N.E.2d 182 (1982).

2. Determination of those issues was necessary to resolution of *Bichler* in favor of the plaintiff there.

3. Those issues are identical to several controlling issues raised by these actions. Wetherill and Rogers seek to estop Lilly from relitigating the issues they cite. Alternatively they ask that Lilly be estopped at least from relitigating here issues allegedly conceded by Lilly in *Bichler*. In either event the proposed estoppel is the predicate for the summary judgment motion.[3]

Lilly responds in two ways:

1. Application of collateral estoppel would be inconsistent with the standards for issue preclusion developed in the case law and exemplified in the Restatement (Second) of Judgments ("Restatement") § 29 (1982).

2. Wetherill and Rogers have not met their burden of showing the issues and facts they cite in *Bichler* (a) were necessarily determined there, (b) are identical to those raised here, and (c) will in fact control the resolution of these actions. Though the first contention has possible force as well, the second is dispositive for current purposes.

### Choice of Law

Under *Erie v. Tompkins* principles, state law provides the rules of decision on all

---

1. For convenience this opinion will refer to the Wetherill facts except where the Rogers allegations differ from those by Wetherill. As indicated in the text discussion, the legal analysis as to the two motions is identical.

2. Identical motions have recently been denied by two District Judges in the District of Columbia. *Dawson v. Eli Lilly & Co.*, C.A. 81–1288 (Aug. 30, 1982); *Watson v. Eli Lilly & Co.*, C.A. 82–0951 (July 30, 1982). Neither of those orders involved any extended analysis.

3. Partial summary judgment is inappropriate in any case, for Fed.R.Civ.P. ("Rule") 56(d) was really not designed for the use to which Wetherill and Rogers seek to put it: the singling out of limited issues on which the Court's judgment may be obtained. *Mendenhall v. Barber-Greene Co.*, 531 F.Supp. 947 (N.D.Ill.1981). Essentially their motion rather comes closer to Rule 16 than to any other Rule. *Malcak v. Cooney*, 93 F.R.D. 830, 831 n.1 (N.D.Ill.1982). Despite such technical problems, this opinion will resolve the legal questions posed by the motion in the interest of advancing the litigation.

questions of substance. As always, the first inquiry is as to Illinois choice-of-law rules.

■ In these tort actions Illinois courts would apply the law of the state with the "most significant relationships" to the allegations of the complaint. *Ingersoll v. Klein,* 46 Ill.2d 42, 262 N.E.2d 593 (1970). Although all the parties except University are out-of-staters,[4] all other relevant factors point to Illinois itself. Illinois is the place of the alleged injuries, the place where the alleged tortious conduct occurred, University's place of incorporation and physical presence, and the place where the relevant relationships among the parties are centered. *See Ingersoll,* 46 Ill.2d at 47–48, 262 N.E.2d at 596; Restatement (Second) of Conflict of Laws § 145 (1971).

Accordingly this opinion looks to Illinois substantive law, including its law of collateral estoppel.[5] It departs from Illinois law only by using the more universal term "collateral estoppel" (or the Restatement's "issue preclusion") rather than "estoppel by verdict" (often used in the Illinois cases).

### Application of Collateral Estoppel Principles

■ Collateral estoppel doctrine teaches "an adjudication on the merits of an issue by a court of competent jurisdiction precludes relitigation of the issue in a subsequent action." *Johnson v. Nationwide Business Forms, Inc.,* 103 Ill.App.3d 631, 633, 59 Ill.Dec. 339, 340, 431 N.E.2d 1096, 1097 (1st Dist. 1981). In general it applies where (*id.*):

1. That issue decided in the prior adjudication is identical to one presented in the current action.

2. Final judgment on the merits was rendered in the first action.

3. Estoppel is asserted against a party identical to or in privity with a party to the prior action.

All those requirements track those of the federal law on collateral estoppel. *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979); *Continental Can Co. v. Marshall,* 603 F.2d 590, 594–95 (7th Cir. 1979). Not surprisingly, they also accord with generally accepted standards. Restatement §§ 27–29.

■ Wetherill and Rogers fail to meet the threshold burdens placed on them. They must show "a finding of specific fact in the former judgment or record that is material to that case and to the pending case," and they must show "with clarity and certainty the precise issues and judgment in the former action." *City of Chicago v. Westphalen,* 93 Ill.App.3d 1110, 1120, 49 Ill. Dec. 419, 428, 418 N.E.2d 63, 72 (1st Dist. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 1625, 71 L.Ed.2d 858 (1982).

But here they have submitted to this Court neither the pleadings nor the trial record nor the actual record of the judgment in *Bichler.* Instead they tender only a copy of the opinion of the New York Court of Appeals affirming the jury verdict, 55 N.Y.2d 571, 450 N.Y.S.2d 776, 436 N.E.2d 182 (1982).

Wetherill and Rogers try to read the appellate opinion in part as a prior adjudication with its own preclusive effect and in part as an unambiguous reflection of the *Bichler* trial record and judgment. They err in both respects, for "it is the judgment, properly construed in the light of pertinent facts, that creates the potential for collateral estoppel, not the appellate decision affirming it." *Kurek v. Pleasure Driveway & Park District of Peoria,* 583 F.2d 378, 380 (7th Cir. 1978), *cert. denied,* 439 U.S. 1090, 99 S.Ct. 873, 59 L.Ed.2d 57 (1979).

This case demonstrates graphically the reason for the rule stated in *Kurek.* Ab-

---

**4.** Wetherill is a resident of Virginia. Rogers resides in California. Lilly is incorporated and has its principal place of business in Indiana.

**5.** For *Erie* purposes collateral estoppel questions are of course matters of substance.

*Kuehn v. Garcia,* 608 F.2d 1143, 1147 (8th Cir. 1979), *cert. denied,* 445 U.S. 943, 100 S.Ct. 1340, 63 L.Ed.2d 777 (1980); *Nathan v. Tenna Corp.,* 560 F.2d 761, 763 (7th Cir. 1977).

sence of the *Bichler* trial record forecloses accurate discernment of just what facts were fairly established at the trial or just what facts were necessary to resolution in favor of the *Bichler* plaintiff. Wetherill and Rogers quote the New York Court of Appeals as holding the link between prenatal DES exposure and the later development of vaginal cancer "has been unquestionably confirmed" during the past decade. But the appellate opinion makes no reference to the trial record in support of that statement, citing instead a New York statute and a law review note. 55 N.Y.2d at 577, 450 N.Y.S.2d at 778, 436 N.E.2d at 184. Similarly Wetherill and Rogers quote the Court of Appeals as holding Lilly made certain admissions at trial, 55 N.Y.2d at 586, 450 N.Y.S.2d at 783, 436 N.E.2d at 189, but Lilly contests that point vigorously. This Court cannot resolve this factual dispute without the factual record. *Cf. Kemling v. Country Mutual Insurance Co.,* 107 Ill. App.3d 516, 522, 63 Ill.Dec. 331, 335–36, 437 N.E.2d 1253, 1257–58 (2d Dist. 1982) (trial court had no record upon which to determine whether defendant had a fair opportunity to contest fact issue at prior arbitration proceeding).

Moreover, even were this Court able to divine the facts fairly determined in *Bichler,* it cannot be discerned from the appellate opinion alone how those facts related to the issues actually controlling that case. In principal part the Court of Appeals opinion deals with the imposition of liability on a concerted action theory, as to which it rejected Lilly's objections on procedural grounds. 55 N.Y.2d at 579, 450 N.Y.S.2d 779, 780–82, 581–84, 436 N.E.2d at 185, 186–88. Similarly, the Court of Appeals used a procedural point to dispose of Lilly's objection to jury instructions on its duty to warn under New York law. 55 N.Y.2d at 586–87, 450 N.Y.S.2d 783–84, 436 N.E.2d at 189–90.

Given the procedural cast of the Court of Appeals' opinion, this Court cannot determine the precise ground for the judgment against Lilly below. Without the pleadings that framed the *Bichler* issues, the controlling issues may only be guessed at—and that is not enough. And without the judgment and the trial record, this Court cannot determine whether the judgment against Lilly might have been based on several different grounds no one of which was expressly relied on, thereby barring invocation of collateral estoppel as to any of them. *See* 1B Moore's Federal Practice § 0.443[4], at 3915 (2d ed. 1982).

Finally, Wetherill and Rogers have clearly not met their burden of establishing the identity between the issues supposedly determined in *Bichler* and those controlling here:

1. Certainly *Bichler*'s concerted action theory of liability is irrelevant to these actions, where Lilly is the identified source of the DES that allegedly injured Wetherill and Rogers.

2. *Bichler* was also apparently decided on a theory of "wrongful marketing" and failure to test, 55 N.Y.2d at 578, 450 N.Y.S.2d at 779, 436 N.E.2d at 185, while Wetherill and Rogers have not shown how such a theory is even relevant to Illinois products liability law.

3. *Bichler* apparently involved a plaintiff who had developed *cancer* as a result of administration of DES to her mother in 1953.[6] Wetherill, on the other hand, alleges she has cervical adenosis as a result of her mother's 1951 exposure to DES.[7]

On the current presentations it is obviously impossible to find an identity of controlling issues between *Bichler* and the present action.

All the factors already discussed are rendered even more critical by the existence of several judgments favorable to Lilly in

---

6. This is clearly suggested by the special interrogatories to the *Bichler* jury cited by Wetherill and Rogers and footnoted by the Court of Appeals. 55 N.Y.2d at 587 n.10, 450 N.Y.S.2d at 783 n.10, 436 N.E.2d at 189 n.10.

7. Rogers originally alleged she has cervical adenosis and had cervical cancer as a result of her prenatal exposure to DES from October 1951 to May 1952. There is a dispute as to whether Rogers' prior cancer diagnosis was erroneous.

70

DES litigation. *See, e.g., Ryan v. Eli Lilly & Co.,* 514 F.Supp. 1004 (D.S.C.1981) (though *Ryan* appeared to depend on issues not controlling here); *Payton v. Abbott Labs,* 512 F.Supp. 1031 (D.Mass.1981) (same). Again the paucity of information prevents a determination whether those judgments were inconsistent in whole or in part with *Bichler* in the respects relevant to these actions. If they were, however, this Court would also be required to decide whether inconsistent judgments on the relevant issues would deny preclusive effect to *Bichler.* Compare Restatement § 29(4) with *Hardy v. Johns-Manville Sales Corp.,* 509 F.Supp. 1353, 1362–63 (E.D.Tex.1981), *rev'd,* 681 F.2d 334 (5th Cir. 1982).[8]

*Conclusion*

In its approval of offensive collateral estoppel the Supreme Court indicated the fundamental question for a trial court is whether the application of the doctrine "would be unfair to a defendant." *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 331, 99 S.Ct. 645, 652, 58 L.Ed.2d 552 (1979). Wetherill and Rogers simply have not armed this Court with enough information to justify a negative answer to that inquiry as a matter of law. Their motion for "partial summary judgment" must be and is denied.

---

8. If that issue ultimately has to be confronted, the parties will have to address at least one issue not treated in their current memoranda. Restatement § 29(4) speaks simply of inconsistency "with another determination" of the litigated issue. Its logic however applies to the situation in which the judgment adverse to the party sought to be estopped *follows* (not precedes) the inconsistent judgment. *Parklane,* 439 U.S. at 330, 331 n.14, 99 S.Ct. at 651 n.14, citing Currie, *Mutuality of Estoppel: Limits of the Bernhard Doctrine,* 9 Stan.L.Rev. 281, 304 (1957). At least theoretically it could be argued an inconsistent *later* judgment should be ignored because it reflected the second court's failure to apply offensive collateral estoppel based on the earlier judgment (perhaps because the plaintiff was unaware of the earlier judgment, or perhaps because the issue was not raised or was wrongly decided). And so far as appears here *Bichler* preceded the decisions cited in this paragraph of the text.